# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DARRELL L. GOLDEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:14-cv-01973 ) CHIEF JUDGE CRENSHAW |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Darrell L. Golden has sued the Metropolitan Government of Nashville and Davidson County, Tennessee, ("Metro") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101, et seq. (Doc. No. 1.) Metro filed a Motion for Summary Judgment (Doc. No. 34), and Golden filed a Response (Doc. No. 40), to which Metro has filed a Reply (Doc. No. 47). For the reasons discussed below, Metro's motion will be GRANTED as to Golden's discrimination claim and any claims under the THRA, as well as his retaliation claim insofar as it applies to allegations other than retaliatory discipline and miscalculation of vacation time on or after October 23, 2012. The motion will otherwise be DENIED as to his claim for retaliation under Title VII.

## I. BACKGROUND

Golden worked for Metro in various capacities for several years, most recently as an equipment operator for Water Services ("Metro Water"). (Doc. No. 41 at ¶¶ 1, 6.) He resigned in March of 2015. (Id. at ¶ 2.) At times, Golden, who is African-American, was assigned to work alongside or under the supervision of another Metro employee, Marty Williams, who is white. (Id.

at ¶ 20; Doc. No. 42 at ¶ 8.) Golden attests that, in November of 2011, a dispute arose between Williams, on one hand, and Golden and another African-American employee, Greg Hodges, on the other. The dispute allegedly arose out of Williams' alleged refusal to perform his share of driving duties. Golden reported Williams' refusal to the men's supervisor, Randy Breedlove, which led eventually to Williams becoming belligerent with Golden and Hodges in front of Breedlove at a Taco Bell. During the confrontation, Williams allegedly used a racial slur, combined with the word "stupid," to refer to Hodges. (Doc. No. 42 at ¶¶ 15−16.) Golden states that it is his understanding that Breedlove reported the incident to two of his own supervisors, Storm Water Supervisor Mickey Jackson and Storm Water Manager Jennifer Hill, who looked briefly into the matter and did not immediately discipline Williams. (Id. at ¶ 17.)

On December 8, 2011, Golden wrote to Metro Water's manager of human resources to complain about Metro's handling of the incident. Golden wrote that it was "disturbing and insulting . . . that the supervisory staff went to Marty Williams, interviewed him and took his written statement" but no one had taken statements from Golden or Hodges. (Doc. No. 42-1 at 1.) Golden complained, "It is as [though] they only want to hear the Caucasian employee side of the story." (Id.) He continued:

> Greg is the employee that was racially insulted. I felt the hurt, anger, and humiliation for Greg as well when this happened. As an African American man I felt violated as well witnessing this attack on my co-worker. I am also feeling discriminated against since no one from MWS [has] come to take my statement knowing that I was present the entire time.
>
> [. . . .]
>
> We don't know if Marty was discipline[d] for this or not. No one will talk to us, the two African American men that were insulted. Is this incident being ignored? Are MWS employees allowed to call the African American employees racial[ly] insulting names?

> Is Marty Williams going to be discipline[d]? If not, is this going to be the norm [where] Caucasian employees can make racial insults to us?

(Id. at 1−2.) Williams eventually received a five-day suspension that was expanded to a ten-day suspension when he appealed it—although Golden maintains that this discipline was only meted out after Golden bypassed his and Williams' immediate supervisors and went directly to HR. (Doc. No. 41 at ¶ 10.)

Golden maintains that, prior to the November 2011 incident, he was, for the most part, treated "fairly well" by Metro Water. (Doc. No. 42 at ¶ 24.) He describes a series of later events, however, that he attributes to either retaliation for his complaint or discrimination. For example, Golden alleges that he and Hodges were improperly excluded from a list of employees eligible for overtime. (Id. at ¶ 25.) He also claims that he was unfairly subjected to heightened scrutiny and discipline for issues related to the safekeeping and display of his Metro badge. For example, Golden was written up when he briefly lost and later recovered his badge at a job site in late 2012 or early 2013. (Id. at ¶ 27.) White employees, he asserts, either were not punished or had their punishments rescinded for similar infractions. (Id. at ¶¶ 27−28.) Golden also claims that, at least once, he directly observed Hill instructing a security guard to make sure Golden had his badge when entering the Metro Water premises. (Id. at ¶ 29.) Golden provides other examples of instances where he believes that he was improperly singled out for discipline or scrutiny that was not imposed on comparably situated white employees. (Id. at ¶¶ 30, 37−38, 45.)

Golden also claims that Metro Water subjected him to improper calculation and administration of his available vacation time, in particular with regard to whether or not he was credited with thirty minutes of non-vacation time for absences that overlapped with a lunch period. Golden maintains that Metro Water's miscalculation caused him to exceed his allotted vacation

time for one month in 2013, which triggered Metro Water policies causing him to lose significant vacation time in the following months. (Doc. No. 41 at ¶ 18; Doc. No. 42 at ¶¶ 31−34.)

At least twice in 2013 or 2014, Golden was assigned to work with an otherwise "all-white" Metro Water crew, of which Williams was by then a member. On the first instance, Williams was serving as the crew's leader, because the usual leader was absent. Golden states that he complained of having to work under Williams and was told by a manager to "get over it." The second time that he was required to work with the all-white crew, Golden was disciplined for causing work to take too long. He maintains that that discipline was unwarranted. Golden asserts that it is generally understood at Metro Water that the all-white crew receives better treatment than other crews and does not like workers from those other crews, in particular African-American workers, to operate its equipment. (Doc. No. 42 at ¶¶ 40−44.)

Golden also complains about Metro's 2013 handling of an issue involving what was referred to as "volunteer" work. Apparently, it was not uncommon for Metro to request volunteers to come in and work weekends as necessary. In this instance, Metro sought volunteers for Saturday work following a storm. Golden initially volunteered, but says that he developed a sinus infection. Golden claims that he was unable to reach his supervisors by phone but sent them text messages letting them know he was sick and could not attend the Saturday work. Nevertheless, he was written up the following Monday. Golden attests that these actions were inconsistent with Metro's ordinary treatment of employees, including white employees, who missed volunteer duty. (Id. at ¶¶ 37−38.)

On August 19, 2013, Golden filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 34-1.) The bulk of the charge involves Golden's allegation that he was "harassed, denied over-time, denied lunch breaks, subjected to different terms and

conditions of employment, and denied advancement opportunities" as retaliation for his complaint about Williams. (Id.) Golden concludes his charge, however, with some general mention of discrimination as well:

> I believe the Respondent has retaliated and discriminated against me in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> I believe that Blacks as a class have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.)

The Department of Justice issued a right-to-sue letter to Golden dated July 14, 2014. (Doc. No. 35.) Golden filed the Complaint in this case on October 14, 2014. He alleges discrimination under Title VII and the THRA as well as retaliation. (Doc. No. 1 at ¶¶ 86−93.) Metro moved for judgment on the pleadings, which Judge Todd Campbell denied on August 10, 2015. (Doc. No. 24.) After Metro filed its Motion for Summary Judgment (Doc. No. 34), Judge Campbell retired and the case was reassigned to the undersigned (Doc. No. 46).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the

truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the material issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## B. Discrimination

### 1. Timeliness

Metro argues that claims based on many of the acts discussed in the Complaint would be untimely under Title VII and/or the THRA. Under Title VII, an employee seeking to pursue a discrimination claim against his employer must file a charge with the EEOC within at most 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); see also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). A cause of action for discrimination under the THRA must be filed "within one (1) year after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d).

Golden concedes that claims based on any discrete acts prior to October 23, 2012, are barred under Title VII's 300-day rule, and he acknowledges a number of matters raised in his Complaint that are subject to that bar. However, he identifies four discrete acts that fell within the period encompassed by the charge of discrimination: (1) discriminatory discipline for issues related to his badge; (2) discriminatory treatment regarding vacation time; (3) discriminatory discipline related to "volunteer" work; and (4) discriminatory discipline when being sent to the

"all-white" crew in late 2013 and early 2014. (Doc. No. 40 at 18.) Metro is therefore entitled to summary judgment with regard to any allegations other than these four.

Golden advances no argument regarding the timeliness of his THRA claims, and more generally fails to discuss the THRA at all. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013) (citing Hicks v. Concorde Career Coll., 449 F. App'x 484, 487 (6th Cir. 2011); Clark v. City of Dublin, 178 F. App'x 522, 524–25 (6th Cir. 2006); Conner v. Hardee's Food Sys., 65 F. App'x 19, 24–25 (6th Cir. 2003); Colston v. Cleveland Pub. Library, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012)). Accordingly, the Court will treat his THRA claims as abandoned.

*2. Exhaustion*

Metro argues next that Golden's discrimination claims are barred by a failure to exhaust the administrative process, because his EEOC charge primarily alleged retaliation, with only brief and general references to discrimination, and did not mention the specific instances of allegedly discriminatory discipline on which he now relies. Golden argues that his charge was sufficient to give rise to charges of both retaliation and discrimination and to encompass the facts underlying his timely claims.

Where a plaintiff has filed a timely EEOC charge, "[a] district court's jurisdiction is 'limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Johnson v. Cleveland City Sch. Dist., 344 F. App'x 104, 109 (6th Cir. 2009) (quoting Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991)). This rule, however, does not impose a categorical bar on consideration of facts or claims that were not explicitly included in the charge. Rather, "where facts related with respect to the charged claim would prompt

7

the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998). Rather, "a plaintiff may bring suit on an uncharged claim if it was reasonably within the scope of the charge filed." Johnson, 344 F. App'x at 109 (citing Davis, 157 F.3d at 463).

Golden's alleged discrimination claim arises out of the same events and patterns at issue in his retaliation claim, such that an investigation into one would naturally lead to and encompass an investigation into the other—especially where the retaliation claim is inextricably bound up with the allegation that certain Metro managers had tolerated racially abusive behavior. Although his charge did not single out the individual disciplinary incidents at issue in this case, Golden generally alerted the EEOC to his "harassment" by Metro, which, when investigated, would fairly implicate the more specific issues of discriminatory discipline. Moreover, his allegations about improper calculation of vacation time are, as he explained, a direct outgrowth of his complaint about not being credited with lunch breaks—an issue directly mentioned in the charge itself. Accordingly, a full investigation of Golden's general allegations would be reasonably expected to reach all of the acts on which he now relies. The Court can consider discrimination claims premised on those allegations.

### *3. Prima facie case*

When, as here, an employee attempts to use indirect evidence to prove discrimination, the Court applies the familiar burden-shifting test announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009); Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009). Golden must establish his prima facie case of discrimination by showing that (1) he is member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated differently

than similarly-situated non-protected employees. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006).

Metro argues that Golden's discriminatory discipline allegations—which make up three of the four discrete acts that survive Title VII's timeliness bar—fail to satisfy the second prong of the prima facie case, an adverse employment action. Golden counters that the disciplinary actions were sufficiently adverse because a Metro employee's disciplinary history would be taken into account for any potential promotions.

Generally speaking, "increased surveillance and discipline, whether warranted or not, do not constitute a material adverse change in the terms of employment in the discrimination context because those actions do not 'constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Lee v. Cleveland Clinic Found., 676 F. App'x 488, 494 (6th Cir. 2017) (quoting White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008)). Golden has identified no reason, in facts or precedents, to treat this case as a departure from that rule. Accordingly, Metro is entitled to summary judgment with regard to his discrimination claims based on discipline.

With regard to Golden's allegation regarding vacation time, Metro argues that he has failed to satisfy the fourth prong of the prima facie case by failing to identify a similarly-situated employee who was treated differently. "[T]o establish a prima facie case using a similarly situated analysis, it is the Plaintiff's burden to identify specific employees who were treated more favorably." Millner v. Sysco Food Servs. of Cincinnati, LLC, No. 1:08-CV-841, 2010 WL 3467908, at *9 (S.D. Ohio Feb. 1, 2010), report and recommendation adopted, No. C-1-08-841, 2010 WL 3468110 (S.D. Ohio Aug. 31, 2010). The only evidence Golden has produced in this

regard is his own sworn declaration that unnamed white employees were treated differently with regard to leave. (Doc. No. 42 at ¶ 36.) By failing to offer any identifying details or corroborative evidence suggesting that specific comparable employees were treated differently, Golden's argument that this prong has been satisfied boils down to little more than his own conclusory assertion that the prima facie case has been met. "If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment is appropriate." Combs v. Int'l Ins. Co., 354 F.3d 568, 576 (6th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The Court will accordingly grant summary judgment to Metro with regard to his discrimination claim based on calculation of vacation time.

Because Golden has failed to establish a disputed issue of material fact with regard to whether he can satisfy Title VII's prima facie case for discrimination with regard to the timely aspects of his claim, Metro is entitled to summary judgment on Count One of the Complaint.

### D. Retaliation

#### *1. Timeliness*

As a preliminary matter, Metro reiterates its timeliness objections with regard to Golden's retaliation claims. The 300-day rule regarding charges of discrimination applies to allegations of retaliatory behavior, as it applies to allegations of discrimination. See Morgan, 536 U.S. at 110. Accordingly, the Court will limit its consideration to the allegedly unlawful actions that Golden has identified as timely challenged.

#### *2. Prima facie case*

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) he or she engaged in protected activity; (2) the exercise of protected rights was known to the

10

defendant; (3) the defendant took an adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013). Metro does not dispute that Golden engaged in protected activity when he complained about the handling of Williams' racially abusive outburst and later filed his EEOC charge. Rather, Metro argues that it is entitled to summary judgment because Golden cannot establish the third and fourth elements of the prima facie case, adverse employment action and causation.

A plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. Laster v. City of Kalamazoo, 746 F.3d 714, 731 (6th Cir. 2014) (citing Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 594–95 (6th Cir. 2007)). A materially adverse employment action in the retaliation context consists of any action that well might have dissuaded a reasonable worker from making a charge of discrimination. Id.; see also Lee, 676 F. App'x at 499. The Sixth Circuit has recognized that the question of whether a particular disciplinary reprimand constitutes an adverse employment action for the purpose of a retaliation claim requires a situation-specific inquiry. See Taylor, 703 F.3d at 338 ("Although certain written reprimands could rise to the level of an adverse employment action, the written reprimands given here would not have dissuaded a reasonable worker from making a claim of discrimination.").

The Court concludes that, based on Golden's characterization of the work environment at Metro Water, disputed issues of fact exist with regard to whether a reasonable worker could be dissuaded by the discipline to which Golden was subjected. Golden describes a workplace where shuffling of titles, responsibilities, and assignments appears to have been fairly common. (See, e.g., Doc. No. 42 at ¶¶ 6, 40−41.) It is reasonable to infer that, in such a setting, workers would be

concerned about accruing formal disciplinary actions that could be held against them in obtaining favorable treatment in the future. The Court therefore cannot conclude that Metro's disciplinary actions categorically would not have dissuaded a reasonable employee from complaining about the 2011 incident and Metro Water's handling thereof. Similarly, a reasonable employee may well have been dissuaded from coming forward if he knew that he would end up losing vacation hours as a result.

Metro argues next that Golden cannot show a causal connection between his 2011 complaint and the alleged adverse actions. To establish a causal connection, the plaintiff must establish that his or her protected activity was a "but-for" cause of the alleged adverse action by the employer. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533–34 (2013). Golden points to the fact that, by his telling, he was treated well by Metro prior to his complaint, after which he was made subject to repeated instances of being singled out for heightened scrutiny and particularly harsh treatment.

Although temporal proximity can be sufficient to create a causal connection "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 505 (6th Cir. 2014) (emphasis added). The Sixth Circuit has not established a bright-line rule for temporal connections in retaliation, but it has found a four-month period of time insufficient to establish a prima facie case of retaliation. Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272–73 (6th Cir. 1986). The negative treatment that Golden has alleged did not begin so soon after his complaint to HR that temporal proximity alone would give rise to an inference of

causation, and the instances of alleged mistreatment that are not time-barred are even more attenuated in time from that complaint.

Golden does, however, offer some additional evidence that might convince a jury that Metro's actions were a direct result of his complaining about Williams' behavior. First, there is the allegedly stark difference in his treatment before and after his complaint. "Causation can be established by . . . evidence that the plaintiff was subjected to closer disciplinary scrutiny after engaging in protected activity." Green v. Cent. Ohio Transit Auth., 647 F. App'x 555, 560 (6th Cir. 2016) (citing Evans v. Prospect Airport Servs., Inc., 286 F. App'x. 889, 895 (6th Cir. 2008)); see also Banks v. Argos Risk Mgmt. Servs., LLC, 963 F. Supp. 2d 778, 786–87 (M.D. Tenn. 2013), amended in part, No. 3:12-00596, 2013 WL 5592202 (M.D. Tenn. Oct. 10, 2013) ("[E]vidence that an employee was singled out, or subjected to increased scrutiny can be considered in the causation equation.") (citing Hamilton v. Gen. Elec. Co., 556 F.3d 428, 436 (6th Cir. 2009)). What Golden alleges is not merely one or two instances of isolated discipline, but a slow, steady accretion of events where he was subjected to harsher, more pervasive scrutiny than he had been before. This pattern, taken as a whole, provides some corroboration that his complaint may have been the cause.

Providing further support, Golden attested to facts tending to suggest that Williams was the beneficiary of a favored workplace status that could explain why a coworker who reported him would face retaliation. Golden explains that Williams was a friend of a supervisor, Jackson, who was directly involved in at least some of Metro's disciplinary actions against Golden. (Doc. No. 42 at ¶¶ 9, 17, 27.) According to Golden, moreover, Williams was placed in leadership positions despite being ill suited to them and lacking the support of his subordinates. (Id. at ¶¶ 12−13, 23.) Eventually, Williams was placed on an all-white crew that was allegedly favored over other crews.

(Id. at ¶ 23.) On this crew, he was placed in a leadership position for at least the second time—despite having faced dissension from his subordinates in his earlier assignment and having been disciplined earlier for using a racial slur. (Id. at ¶¶ 12−13, 23; Doc. No. 41 at ¶ 10.) A reasonable fact finder could construe these events as corroborating supervisors' desire to advance Williams and to insulate him from racially charged conflict and/or the consequences thereof. Where the evidence shows that one employee is strongly favored by management, and another employee is subjected to heightened scrutiny after complaining about his favored peer, a fact finder may reasonably infer but-for causation.

Finally, Metro generally objects to Golden's overreliance on his own declaration and his failure to cite support from additional evidence uncovered in discovery. Golden's declaration, however, is well within the boundaries of materials appropriate for establishing a dispute of material fact for the purpose of summary judgment. See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015), as amended (June 24, 2015) ("[On summary judgment, the] court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form.'" (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015))). While the Court will not deny summary judgment based solely on a plaintiff's self-serving conclusory assertions that his case has merit, it also will not disregard Golden's status as an appropriate fact witness simply because he is a party to this case. Golden may testify on workplace matters that he personally experienced or observed, and that testimony is sufficient here to create a fact issue for trial. The lack of corroboration goes to his testimony's ultimate weight, not its sufficiency under Rule 56.

If a plaintiff "succeed[s] in making out the elements of a prima facie case of retaliation, the burden of production shifts to [the defendant] to articulate a legitimate, non-retaliatory reason for" its adverse employment action. Evans v. Prof'l Transp., Inc., 614 F. App'x 297, 300 (6th Cir. 2015) (citing Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)). It is unclear from the pleadings whether Metro seeks summary judgment based on such an argument, but insofar as it does, it has failed. Metro has advanced no plausible rationale that would justify imposing discipline more harshly on Golden than on ordinary employees. Even if Golden was guilty of all the infractions of which he was accused, that would explain only *some* discipline, not *heightened* discipline. As for his allegations regarding lunch breaks and overtime, there appear to be disputed issues of fact with regard to whether Metro's actions were merely an application of its general policy or not. (See Doc. No. 41 at ¶ 18.)

Metro advances no other arguments in support of summary judgment related to retaliation. Accordingly, there are disputed issues of material fact with regard to Golden's retaliation claim that preclude the Court from granting summary judgment on Count Two.

## CONCLUSION

For the reasons discussed above, Metro's Motion for Summary Judgment (Doc. No. 34) will be GRANTED as to Golden's discrimination claim and any claims under the THRA, as well as his retaliation claim insofar as it applies to allegations other than retaliatory discipline and the miscalculation of vacation time on or after October 23, 2012. The motion will otherwise be DENIED as to his claim for retaliation under Title VII.

The Court will enter an appropriate order.

                                                                                         _____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE